AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| PAUL ROBESON | ) | Case No. |
| | ) | |
| | ) | 3 13 70286 |
| Defendant(s) | ) | |

FILED
MAR 13 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

NC

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 2012__ in the county of __San Francisco__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 2422(b) | Attempt to induce and entice a minor to engage in prostitution |

Mandatory minimum prison term of 10 years;
Maximum Prison Term of Life;
Maximum Fine of $250,000;
Term of Supervised Release of 5 years;

This criminal complaint is based on these facts:
Please see attached Affidavit in Support of Criminal Complaint

(Approved as to form: _____ )
AUSA TAYLOR

☒ Continued on the attached sheet.

_____
Complainant's signature

Jacob Millspaugh, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 3/12/2013

_____
Judge's signature

City and state: San Francisco, CA

The Honorable Nathanael M. Cousins
Printed name and title

I, JACOB D. MILLSPAUGH, hereby duly sworn, declare and state:

## I. INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. This Affidavit is made in support of a Criminal Complaint charging Paul ROBESON with attempted enticement and inducement of a minor to engage in prostitution in violation of 18 U.S.C. § 2422(b).

3. Because this Affidavit is submitted for the limited purpose of obtaining an arrest warrant, I have not included each and every fact known to me that supports probable cause for arrest. Rather, I have set forth only the facts that I believe are necessary to support the lawful arrest of the individual listed in this Affidavit.

4. In addition, where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records are referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

## II. AGENT BACKGROUND

5. I am a Special Agent (SA) of the United States Department of Justice, Federal Bureau of Investigation (FBI), and have been so employed since September, 2004. I am currently assigned to the San Francisco Field Division of the FBI, and investigate cases involving violent gangs and drug trafficking. I have received training at the FBI Academy in Quantico, Virginia, including training on violent street gangs, criminal case management, informant development, Title III investigations and the identification, use, packaging and sales of controlled substances. I have participated in numerous local and federal search warrants and arrests involving alleged narcotics trafficking, homicide, robbery, pimping and pandering. I have participated in numerous investigations of narcotics traffickers, violent street gangs and gang members. These investigations have involved the use of confidential sources, wire and physical surveillance.

6. During the course of my career with the FBI, I have interviewed gang members, pimps, individuals engaged in prostitution, drug dealers, drug users, and knowledgeable confidential informants about their lifestyles, appearances, and habits. I have become familiar with the manner in which gang members, pimps and narcotics traffickers use telephones, cellular telephone technology, intentionally vague language, coded communications and slang-filled conversations, false and fictitious identities, and other means to facilitate their illegal activities and to thwart law enforcement investigations. I am also familiar with the manner in which narcotics traffickers smuggle, package, transport, store and distribute narcotics, as well

as how they collect and launder drug proceeds. I have had discussions with other law enforcement personnel about sex trafficking and the various methods by which individuals, including minors, are coerced and or enticed to engage in sex trafficking. I have also had discussions the packaging and preparation of narcotics, the distribution methods of illegal narcotics traffickers, and the security measures that narcotics traffickers often employ. I have also examined documentation of various methods by which cocaine, methamphetamine, marijuana, and other illicit drugs are smuggled, transported and distributed.

7. I have received formal training at the FBI Academy's Basic Agent Training in Quantico, Virginia. During this five-month course, I received several hundred hours of instruction in law enforcement investigations, including instruction on violent gangs, organized crime and narcotics trafficking. I have also received training related to gang and narcotics investigations, including many that provided instruction on drug trafficking methods, money laundering methods, and techniques for investigating those crimes. Throughout my law enforcement career, and as part of my participation in this investigation, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local investigators.

8. I have also participated in surveillance of gang members, pimps and narcotics traffickers. During surveillance, I have personally observed counter-surveillance techniques, narcotics transactions, and the ways in which narcotics traffickers conduct clandestine meetings. I have also participated in investigations that involved the interception of wire communications, and I have been directly involved in the review and deciphering of intercepted coded conversations between narcotics traffickers that were later corroborated by surveillance or by defendants' statements.

9. I have had numerous discussions with other law enforcement officers and cooperating individuals about gang investigations. In addition, during the course of my career, I have gained knowledge and expertise in the utilization of pen register and trap and trace devices; telephone toll analysis; the analysis of traditional types of records, including financial records, telephone records, and utility records. I have also gained knowledge and expertise of the methods used by criminal street gangs obtained through my training and by the methods detailed above.

## III. APPLICABLE LAW

10. Under Title 18 U.S.C. § 2422(b) [handwritten: 2422 ⌒ ℘. JM], it is unlawful for anyone to use the mail or any facility or means of interstate commerce to knowingly persuade, induce, entice or coerce any individual who has not attained the age of 18 years to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense or to attempt to do so.

## IV. STATEMENT OF PROBABLE CAUSE

11. I am familiar with the facts and circumstances of this case as a result of my personal participation in this investigation which has included the following: the physical surveillance of targets of this investigation, the handling or debriefing of Confidential Source(s) who have

participated in this investigation and discussions with agents and officers of other state and local law enforcement agencies that are assisting/participating in this investigation. The conclusions and opinions set forth below are based on my experience and training as an FBI Special Agent, my direct participation in this investigation, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation.

12. The FBI is conducting an organized crime investigation, with the San Francisco Police Department ("SFPD"), which is targeting a racketeering enterprise operating in the San Francisco Bay Area. The primary focus of this investigation is the Central Divis Playaz (CDP), which is a racketeering enterprise suspected of sex trafficking, distribution of controlled substances, gun trafficking, robbery and murder. Paul ROBESON a/k/a "P-World," is a member of CDP and a subject of the investigation. ROBESON is believed to be involved in sex trafficking and other crimes.

13. In October 2012, a SFPD officer was working undercover (hereinafter, the "UC") on the internet posing as an under-aged girl. She has been contacted by ROBESON during the investigation. Specifically, on or about October 1, 2012, a user on Facebook with the profile name of "Young MackinAss PWorld" made contact with the UC's undercover Facebook profile. After a series of Facebook messages with Young MackinAss PWold, the UC provided her telephone number. Using a date of birth that the UC gleaned from Young MackinAss PWorld's Facebook page, the UC was able to identify ROBESON as a possible owner of the Facebook profile. Additionally, the UC identified photographs on Young MackinAss PWorld's Facebook page as PAUL ROBESON after viewing mug shot photographs of ROBESON.

14. Following the initial contact on Facebook, ROBESON began sending text messages to the UC from his telephone. During the course of several text message conversations, ROBESON asked the UC to send him photographs of herself. The UC had informed ROBESON that she was currently working as a prostitute in Reno, Nevada and was currently 16 years old. ROBESON asked the UC in a text message "...U looking ta build wid ah fresh young fast Frisco boss or u tryna do u cause ya tired of nigas playn wid ya hoen?" Also a few days later, ROBESON sent the following text message "was the word lady u gone give young world ah chance to advance it one time I want sum of ya hoen or u still wid the nigga?" I know from my training and experience that "hoen" is slang for whoring, which refers to prostitution. I also believe in the aforementioned text messages that ROBESON was asking the UC if she wanted to move to San Francisco and leave her current pimp.

15. ROBESON continued "If he playin wid ya hoen come give it ra me ima appreciate ya moe than da nigga seem tab u deserve sum real and das gone go hard bout ya hoen." The UC informed ROBESON that she was not currently with a pimp and she asked if he wanted her to work the "track." I know from my training and experience that "the track" refers to common areas in the street for prostitutes to work. ROBESON asked if the UC worked the "net" or the "blade?" The UC told ROBESON that she only walked the track and worked the casinos. I know from my training and experience that working the "net" refers to posting prostitution adds on the internet and working the "blade" refers to working on the street.

16. On or about October 5, 2012, the UC had a telephone conversation with ROBESON. During the course of the conversation ROBESON again asked what the UC's age was and she responded 16. ROBESON told the UC that by her photographs she did not look "a day under 19." ROBESON asked the UC if her former pimp had procured a fake ID card for her. ROBESON told the UC that she needs to be prepared to be arrested by the police since she is a juvenile. ROBESON said "if you get caught up and you're 16 years old, they're definitely going to take you down, they're going to take you to juvy or they might take you to jail so they can figure out who you is if you give them your alias, so you definitely have to have something you like to use. You don't want to use your name. If you don't have no record and you still a juvenile you good, you can use a Jane Doe and that will be your name for the rest of your mother fuckin life." The UC asked ROBESON what he wanted her to call him and ROBESON told the UC to call him "Daddy." ROBESON also explained to the UC the importance of advertising on prostitution related websites. The UC told ROBESON that she was not currently advertising on any websites. ROBESON told the UC that he would set up a profile for her on myredbook.com and several other websites. Cellular tower location data for ROBESON's telephone indicated that he was using a cellular tower located in Pittsburg, California, within the Northern District of California.

17. ROBESON asked the UC to send him "exclusive" photographs to use in the advertisements. Following the telephone conversation, the UC sent ROBESON an image of her face and two sexually explicit images, obtained from the internet, of a woman that did not show her face. ROBESON then sent a text message to the UC stating that his "choosing fee" was "5 stacks." ROBESON then asked the UC via text message her identifying statistics such as her height, weight, eye color, hair color and bra cup size. I know from my training and experience that a "choosing fee" is a fee charged by a pimp to allow a prostitute to work with him. I also know from my training and experience that "5 stacks" refers to $5,000.00.

18. The following day, October 6, 2012, ROBESON sent the UC a text message stating that he had posted advertisements for her on prostitution related websites. ROBESON stated that the ads were for both in-calls and out-calls in the Reno, NV area. ROBESON instructed the UC to go to myredbook and search for her telephone number to find the advertisement. ROBESON told the UC to read that ad so she would know what to say to callers. ROBESON stated "... da name I used fa u is honey bunny ok hopu herd me make show u let me knw of any calls comen in k." I know from my training and experience as well as conversations with other law enforcement officers that www.myredbook.com is a website where various prostitutes and prostitution services are commonly advertised. I also know from my training and experience as well as conversations with other law enforcement officers that "in-calls" and "out-calls" refer to the rates charged by prostitutes depending on whether or not the prostitute has to travel to engage in the acts of prostitution.

19. Following the previous text message conversation, the UC located an advertisement on www.myredbook.com, ad number 423067, which listed rates for "Honey Bunny" and the UC's telephone number. The ad listed her age as 21-24, blue eyes, blond hair, height 5'5" – 5'7" and her "kitty" as bald. The UC sent ROBESON a text message stating that she had found the advertisement. ROBESON responded that he had posted two ads for San Francisco and one for Reno. ROBESON later sent a text message to the UC stating "u betta

be stayin in pocket out dere foe me I don't wawnt my bitch fuckin off wid niggas cause im not round ya stay to ya self less it bout sum $." Based on my training and experience I believe that ROBESON was telling the UC to remain loyal to him as her pimp and not work with any other pimps.

20. On or about October 8, 2012, during a text message conversation with ROBESON, he told the UC "... bring you ass and see how u want it ta be wid me? ..." UC told ROBESON that she could take a bus from Reno for $34.00. ROBESON responded "yeah ok get ya shyt together and be on ya way than either downtown Frisco or Oakland ima come get u Frm dere k let me knw whe u on ya way got ya ticket and shyt ok." Later that night ROBESON asked the UC if she was close to San Francisco and that he was going to get a hotel room for them. The UC sent ROBESON a text message stating that while on the bus she was solicited for an act of prostitution and got off the bus in Sacramento. The following morning the UC sent ROBESON a text message stating that she had made $800.00 from the act of prostitution. ROBESON. ROBESON stated "ok das coo he beat dat young pussy up hug lol...was he in love after u got make him a reguale all ya clients can be regs if ya make it possible."

21. Following the above text message conversation, the UC had no further substantive contact with ROBESON. The UC subsequently searched the internet for ROBESON's telephone number and email address and located an additional advertisement for an Asian female on www.myredbook.com.

22. An investigation into ROBESON's telephone number revealed that his cellular telephone provider was Metro PCS. I spoke with a representative of Metro PCS who told me that all text messages sent from a Metro PCS cellular telephone are routed through a text messaging server that is located in the Dallas, Texas area.

23. During the conversations with ROBESON, the UC was in the Northern District of California.

24. Based on the fact that ROBESON sent numerous text messages to the UC, and those text messages were routed through an out-of-state text messaging server on the Metro PCS network, ROBESON necessarily affected interstate commerce.

## IV. AUTHORIZATION REQUEST

25. Based on the foregoing there is probable cause to believe that, in or around October 2012, Paul ROBESON unlawfully attempted to entice a minor to engage in prostitution, as described above, in violation of Title 18 U.S.C. § 2242(b) 2422

## V. REQUEST FOR DELAYED NOTIFICATION AND SEALING

26. I REQUEST, in order to avoid compromising this on-going investigation, the subjects' flight, and for the safety of the agents and officers, that this Application, Affidavit and Warrant be filed under seal until further order of the Court except that working copies should be made available to the United States Attorney's Office, the FBI, any other law enforcement agency

designated by the United States Attorney's Office. I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

JACOB D. MILLSPAUGH
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me
this 12th day of March, 2013

HONORABLE NATHANAEL M. COUSINS
UNITED STATES MAGISTRATE JUDGE